IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAISE J. WOODS,                      :

    Plaintiff,                   :

vs.                                  :
                                     CIVIL ACTION 09-493-M
MICHAEL J. ASTRUE,                   :
Commissioner of
Social Security,                     :

    Defendant.                   :

## MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc.22). Oral argument was heard on February 22, 2010. Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is Ordered that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983), which must be supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing, Plaintiff was forty-four years old, had completed a high school education, and had previous work experience as a day care worker (Doc. 17 Fact Sheet).  In claiming benefits, Plaintiff alleges disability due to arthritis, diabetes, and obesity (*id.*).

The Plaintiff filed an application for SSI on May 15, 2006 (Tr. 116-20).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she could not perform her past relevant work, Woods was capable of performing specified sedentary work existing in the national economy (Tr. 14-33).  Plaintiff requested review of the hearing decision (Tr. 11-12) by the Appeals Council, but it was denied (Tr. 1-3).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Woods alleges that:  (1) Her impairments meet or equal the requirements of Listing 1.02; and (2) she cannot perform a full range of

2

sedentary work (Doc. 17).  Defendant has responded to—and denies—these claims (Doc. 18).  The relevant medical evidence of record follows.

Dr. Michael C. Madden examined Plaintiff on August 29, 2006, noting that while she was in no apparent distress, she had ankle edema (Tr. 210-15).  Further examination indicated that the lumbar area of her back was tender; straight leg raises from a sitting position were negative bilaterally.  She had a slight limp during the exam, though she had a normal gait while exiting the clinic.  Madden also noted the following:

> When she attempted to squat and rise she was only able to flex her knees approximately 90 degrees.  She also has some crepitus with flexion and extension of her knees.  She claims to use an assistive device consisting of a walker.  That is not with her today.  She did not receive a prescription for this.  She claims that she does use it to walk inside the house.  Her gait without the assistive devise, has a slight limp favoring her right leg.  The assistive device does not appear to be required to walk at all.  It does not appear to be required for prolonged, continuous walking only.  It does not appear to be required for special situations such as being outdoors or on uneven surfaces.  There are no findings on physical exam which would support the use of a walker.

(Tr. 211).  An x-ray of the right knee revealed no fractures or dislocations, though there was "joint space narrowing as well as moderate osteophyte formation noted" (Tr. 213).  Dr. Madden completed a chart which indicated normal range of motion in all

areas except that she had decreased (110 instead of 150) knee flexion bilaterally (Tr. 214-15). The doctor's impression was arthritis in her knee and shoulders, diabetes, and depression though he found that her "ability to do work-related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking and traveling appears to be adequate for normal duty" (Tr. 212).

On July 10, 2008, Dr. William A. Crotwell III, an orthopaedic surgeon, examined Woods who complained of pain across her lower back and in her right knee (Tr. 280-83). Crotwell noted that she ambulated without assistance and reported that she cooked and cleaned three days of seven, could drive locally, and walk two or three blocks. The doctor noted the following during his examination:

> She did not have any difficulty taking off her shoes, bending, flexing. On exam of the lower extremities, toe and heel walk normal. Forward flexion 70 to 80, extension 30 to 40. Deep tendon reflexes +2 in the patella and Achilles. Sensory is normal. Motor is 5/5. Straight leg raise sitting 90 degrees right and left, just pain in her knee on the right not in the back. Hip rotation negative. Straight leg raise lying 80 degrees right and left with increased pain with plantar flexion and decreased pain with dorsiflexion both right and left, which is inconsistent. Calves measure 18 inches each, thighs 29-1/2 inches each.
> Examination of the left knee, range of motion 0 to 110. Negative pivot shift and McMurray. The collateral cruciate ligaments seem to be intact. The patella is

4

centralized. She has a varus deformity of 15
to 20 degrees, mild effusion, some
crepitance. The right knee goes from -10 to
90, questionable pivot shift. You can't even
do it because it is too painful. Negative
McMurray. The patella is centralized. There
is a varus deformity of 15 to 20 degrees, a
large effusion, crepitance. A little bit of
laxity, grade I of the medial collateral
ligament.

**X-RAYS:** X-rays of the lumbar spine showed
arthritis of the lumbar spine, degenerative
disc disease at 4-5, L5-S1 with a huge spur
at L5-S1.
    X-rays of the left knee, AP and lateral
showed medial joint space collapse with a
varus deformity of 10 or 15 degrees with
arthritis throughout the knee.
    X-rays of the right knee showed severe
arthritis with medial joint space collapse
severe, much worse than the left with a varus
deformity of 15 to 20 degrees with
calcification over the medical condyle of the
femur and possibly a loose body in that area
also, or in the right knee, worse
patellofemoral arthritis.

(Tr. 281). Dr. Crotwell's impression was lumbar degenerative disc disease with no radiculopathy, bilateral arthritis of the knees (worse on the rights), and contracture of the right knee. The Orthopaedist's recommendation was as follows:

> I think this patient could carry out very
> light duty, could definitely carry out
> sedentary. I do not believe the patient can
> do any sort of ambulation at all. I think
> she could go to and from the work place but
> would have to be limited; no stairs, no
> ladders, limited inclines, able to move
> around slightly during the day but would be
> very limited. She could definitely do a
> sedentary job. I think she could carry out

5

an eight hour work day.

(Tr. 282). The doctor also completed a physical capacities evaluation in which he indicated that Plaintiff had the ability to sit one and stand one hour at a time but could sit for eight hours and stand for two hours during an eight-hour day; she could not walk for any period of time (Tr. 283). Crotwell found that Plaintiff was capable of lifting up to five pounds continuously and twenty-five pounds occasionally, but could carry up to five pounds continuously, ten pounds frequently, and twenty-five pounds occasionally; he did not think Woods could use her right foot for repetitive movement. The doctor also said that while she could occasionally bend and frequently reach, she should never squat, crawl, or climb.

Plaintiff testified at the first evidentiary hearing that she used a walker three or four days a week to get in and out of bed and to bathe (Tr. 295). She was able to vacuum, dust a little, and cook; she could groom and dress herself (Tr. 299). Woods could drive; she shopped with her son, riding in the buggy because she could not walk around the store for that long (Tr. 299-300). Plaintiff could walk ten-to-fifteen minutes at a time after which she needed to sit for an hour or two (Tr. 300). At the second hearing, five months later, Woods testified that her condition was worse as she needed a walker to clean at home and to walk around (Tr. 47-48). She could only walk for half a block

(Tr. 48); Plaintiff had trouble getting in and out of the tub (Tr. 51). Woods was still able to drive (Tr. 51).

At the second evidentiary hearing, the ALJ questioned a Vocational Expert (hereinafter *VE*) who stated that he had been present to hear Plaintiff's testimony and had reviewed the record (Tr. 53-58). The VE testified that Dr. Madden's report would not restrict Woods in any way and that she could perform her past work; he went on to say, however, that the assessment made by Dr. Crotwell would not allow Plaintiff to perform her past work, but that she could do limited sedentary work. Specifically, Woods would be capable of performing the work of an assembler, surveillance monitor, and information clerk. Upon further questioning by both Plaintiff's attorney and the ALJ, the VE stated that these jobs took into consideration Dr. Crotwell's finding that she could get back and forth to work, but could do no walking once she got to her job (Tr. 58-60).

The ALJ gave determinative evidentiary weight to the findings and opinions of Dr. Crotwell (Tr. 30). Based on Crotwell's findings and the testimony of the VE, the ALJ found that Woods could not return to her past relevant work, but could perform the sedentary jobs of assembler, surveillance monitor, and information clerk (Tr. 31-32). The ALJ specifically found that Plaintiff's impairments did not meet or equal the requirements of Listing 1.02 (Tr. 20).

7

In bringing this action, Plaintiff first claims that she is disabled under Listing 1.02, "major dysfunction of a joint(s) (due to any cause)," the requirements of which are set out as follows:

> Characterized by gross anatomical deformity (*e.g.*, subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate, effectively, as defined in 1.00B2b;
> or
> B. Involvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), as defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.02 (2009). The Court further notes that the regulations, in 1.00B2b, state that "[*t*]*o ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00B2b (2009).

The Court finds substantial support for the ALJ's conclusion that she does not meet the requirements of this Listing. Both

Drs. Madden and Crotwell noted Woods's ability to walk without an assistive device. Though Plaintiff points to Dr. Crotwell's finding that "she could not do any ambulation at all" (*see* Doc. 17, pp. 4-5), the Court notes that the balance of the doctor's conclusion was that she could move around slightly during the day once she arrived at work (Tr. 282). This is consistent with the statements in Listing 1.00B2b. More importantly, Dr. Crotwell unequivocally stated that it was his opinion that Woods was capable of working an eight-hour workday, albeit sedentary work. The testimony of the VE clearly accommodates Dr. Crotwell's conclusions about Woods's abilities. Plaintiff's claim otherwise is without merit.

Plaintiff's second claim is that she cannot perform a full range of sedentary work. The Court notes the following:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a) (2009).

The Court notes that the ALJ did not find that Woods could perform a full range of sedentary work. Specifically, the ALJ

9

found that Plaintiff had the residual functional capacity to perform sedentary work, but that she was limited as found by Dr. Crotwell in his physical capacities evaluation (Tr. 21; *cf.* Tr. 283). The ALJ, in adopting these restrictions, inherently acknowledges that Woods is incapable of performing a full range of sedentary work. Nevertheless, this in no way diminishes the ultimate finding that Plaintiff is capable of working. Any claim otherwise is without merit.

Woods has raised two claims in bringing this action. They are both without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is Ordered that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 2nd day of March, 2010.

s/BERT W. MILLING, JR.  
UNITED STATES MAGISTRATE JUDGE
